## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IN RE INDICON

VANGUARD PRODS. CORP.,
     Appellant,

     v.

KIM CITRIN, ET AL.,
     Appellees.

CIVIL ACTION NO.
No. 3:12cv00725 (SRU)

## MEMORANDUM OF DECISION

Appellant Vanguard Products Corporation ("Vanguard") appeals from the order of the

United States Bankruptcy Court for the District of Connecticut, dated March 30, 2012, granting

Joseph Tesoriere's ("Tesoriere") letter motion to dismiss an adversary proceeding against him

and dismissing *sua sponte* Vanguard's adversary proceeding against the other defendants.

(Bankr. No. 11-05133 (AHS), doc. # 116).  For the reasons that follow, the order is

**AFFIRMED**.

### I.    Background[1]

This appeal from the bankruptcy court is brought by the former landlord of the debtor.

The landlord, Vanguard, brought claims in an adversary proceeding against the debtor, Indicon,

after it discovered the debtor's Chapter 11 bankruptcy case.  Vanguard's complaint alleged a

series of violations of the Bankruptcy Code and breach of a commercial lease committed by the

debtor, its president, and other employees and agents.  The bankruptcy court dismissed

Vanguard's complaint for lack of subject matter jurisdiction.

---

[1] All background information is taken from Vanguard's First Amended Complaint, unless

A.  <u>The Indicon Bankruptcy</u>

On November 30, 2004, Indicon commenced its chapter 11 bankruptcy case.   During the
reorganization proceeding, but prior to confirmation of the bankruptcy plan (the "Plan") (Bankr.
No. 04-51376 (AHWS), doc. # 233), Indicon, through its president, Kim Citrin, entered into a
letter of intent with Dymax Corporation ("Dymax"), dated March 18, 2008, which provided for
the prospective sale of Indicon's assets.   Tesoriere, a financial advisor, alone or with his
company, Omni Solo, Inc. ("Omni Solo"), assisted in the negotiation of the letter of intent.[2]
Around February 2007, Tesoriere became Indicon's chief restructuring officer.  Tesoriere and
Omni Solo also helped Indicon negotiate an asset purchase agreement with Dymax, dated July
17, 2008. The asset purchase agreement was timed to occur two days after the bankruptcy court
approved Indicon's disclosure statement.  Neither the bankruptcy disclosure statement nor the
Plan mentioned any prospective sale of Indicon's assets to Dymax or Tridak LLC ("Tridak").[3]
In anticipation of the sale, and while she was acting as Indicon's president, Citrin received an
agreement from Dymax promising her compensation of $400,000 over four years. This
employment agreement, although dated June 1, 2008, also was not mentioned in Indicon's
disclosure statement.

Three days after the hearing on the disclosure statement, a letter dated July 18, 2008 and
signed by Citrin was sent to Indicon's employees on Dymax letterhead advising them that

---

otherwise noted.
    [2] Tesoriere succumbed to a terminal illness on November 8, 2012, during the pendency of
this appeal.  *See* Notice by Omni Solo (doc. # 12).  On May 5, 2013, the court granted
Vanguard's motion to substitute Marie DeSalvo, Tesoriere's surviving spouse, as the
representative of his estate for purposes of this appeal.  *See* Order (doc. # 16).
    [3] On May 23, 2008, Dymax formed Tridak LLC ("Tridak") for the purpose of purchasing
Indicon's assets and integrating them into Dymax's business.  Am. Compl. at ¶ 26.

Indicon was "nearing the final steps in the Dymax acquisition of Tridak" and now was integrating Tridak's operations with Dymax's.

While the sale was proceeding, Indicon continued to seek confirmation of the Plan, which provided for Indicon to continue operating as a going-concern while providing creditors a dividend of 20% of their claims. Indicon represented in its disclosure statement that the source of payment to creditors was "shareholder loans and third-party loans in the amount of $41,000."

On August 21, 2008, the bankruptcy court confirmed the Plan and the asset sale was consummated three weeks later. From the sale proceeds, Omni Solo was paid $82,800 and Stephen Curley ("Curley") was paid to represent Indicon in a state court dispute with a secured creditor. The debtor continued to hide the sale of its assets by representing in its September 2008 monthly operating report that there were "no assets sold or transferred outside the normal course of business in this reporting period."

B. Vanguard Adversary Proceedings

At the time Indicon filed for bankruptcy, Vanguard was the debtor's landlord on a five-year commercial lease. During the bankruptcy case, the debtor entered into a lease extension agreement with Vanguard for an additional five years, to October 31, 2011. Although Indicon disclosed the lease in bankruptcy, it was not assumed or rejected. Vanguard had no notice of any of the proceedings in the bankruptcy case, including a hearing on Indicon's disclosure statement or confirmation of the Plan.[4]

---

[4] "It is undisputed that Vanguard was not included as a creditor in the schedules accompanying the debtor's petition or in its initial mailing matrix. Vanguard was not added as a creditor to the case until the case was reopened on January 28, 2010. Therefore, Vanguard was not given notice of the deadline for filing proofs of claim." Bankr. Court Mem. Granting Def.'s Rule 12(b)(1) Letter Motion (doc. #116) at 2.

Vanguard brought pre-judgment proceedings in state court for breach of the extended lease on November 21, 2008, three months after confirmation of Indicon's bankruptcy plan. In response, Indicon filed a notice to stay that action. While the stay was pending, Indicon also filed several applications for entry of a final decree with the bankruptcy court. The applications did not disclose the state court action. A final decree was entered on February 10, 2009. The state court dismissed the action before it on procedural grounds.[5]

On February 24, 2010, the bankruptcy court granted Vanguard's motion to reopen the bankruptcy case. Vanguard filed an amended complaint seeking: (1) damages for breach of the lease agreement; (2) a determination that the damage claim was not discharged by confirmation of the Plan; (3) allowance of the damage claim as an administrative expense; (4) redress for the fraudulent disclosure of Indicon's asset sale; (5) recovery from Tesoriere and Omni Solo for receiving a fraudulent transfer and for receiving substantial compensation without obtaining an order from the bankruptcy court authorizing their employment; (6) recovery from fees paid to Curley during the bankruptcy case without bankruptcy court approval; and (7) recovery from Tridak and Dymax relating to fraudulent transfers and successor liability.

On August 1, 2011, Tesoriere filed, in the form of a letter, a motion "pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the adversary proceeding as to me . . ." (Bankr. Ct. doc. # 50 at 1). The bankruptcy court began its decision by noting that Vanguard began the adversary proceeding on May 9, 2011, "more than three years after confirmation of the debtor's

---

[5] On May 11, 2009, the state court determined that the prejudgment remedy Vanguard sought was not stayed by Indicon's bankruptcy or the discharge injunction because Vanguard lacked notice of the bankruptcy; therefore, its claim was not discharged. On June 1, 2009, the state court conducted an evidentiary hearing, and, on June 3, 2009, issued a prejudgment remedy of attachment in Vanguard's favor. On July 15, 2009, based on procedural defects, Indicon moved to dismiss the prejudgment remedy, which was granted on November 20, 2009. Bankr. Court Mem. Granting Def.'s Rule 12(b)(1) Letter Motion (doc. #116) at 3.

Plan and the sale of all of its assets; more than two years after the entry of a final decree; and almost two years after the debtor ceased to exist."  Bankr. Court Mem. Granting Def.'s Rule 12(b)(1) Letter Motion (doc. #116) at 4.  It then applied the "close nexus test," *see infra*, under which a party may invoke the bankruptcy court's jurisdiction after confirmation of a bankruptcy plan.  Under that test, as stated in *Ace Am. Ins. Co. & Pac. Employers Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 448 F. App'x 131, 136 (2d Cir. 2011), *cert. denied*, 2012 WL 2368700 (June 25, 2012) (citations omitted), and as applied by the bankruptcy court, the matter must have a "close nexus" to the bankruptcy plan and the bankruptcy plan must provide for the retention of jurisdiction. The bankruptcy court found Vanguard to have failed that test for two reasons.  First, the plain language of the plan ended the court's jurisdiction upon issuance of the final decree.  Second, the court found that there was no close nexus between resolution of Vanguard's adversary proceeding because the matter does not "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan . . . ."

The bankruptcy court granted Tesoriere's motion and dismissed *sua sponte* the adversary proceeding against the other defendants.  This appeal followed.

## II.      Standard of Review

Federal district courts have jurisdiction to hear appeals of final judgments, orders, and decrees of the Bankruptcy Court under 28 U.S.C. § 158(a)(1).  *In re Flanagan*, 415 B.R. 29, 38 (D. Conn. 2009).  On appeal, the district court will "review Bankruptcy Courts' conclusions of law *de novo*, and their findings of fact for clear error."  *Mercury Capital Corp. v. Milford Connecticut Associates, L.P.*, 354 B.R. 1, 6-7 (D. Conn. 2006) (citing Fed. R. Bankr. P. 8013). The district court may "affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

## III.     Discussion

The appeal presents two issues.  First, whether the bankruptcy court erred when it ruled that it had no subject matter jurisdiction over the appellant's complaint because the debtor's plan stated that the bankruptcy court would only retain jurisdiction of the bankruptcy case until entry of a final decree.  The second issue is whether the bankruptcy court erred when it ruled that it lacked subject matter jurisdiction because there was no "close nexus" between the resolution of the adversary proceeding and the Plan.

### A. Standards Governing the Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a court must accept the material factual allegations in the complaint as true, but need not draw inferences favorable to the plaintiff. *J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied,* 125 S. Ct. 1727 (2005); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998). A court may also consider materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence. *J.S.,* 386 F.3d at 110; *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000). Finally, the party asserting the court's subject matter jurisdiction has the burden of proving it by a preponderance of the evidence. *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  Thus, the court must accept as true Vanguard's material factual allegations, but it need not liberally construe its complaint.

### B. Bankruptcy Court Jurisdiction under 28 U.S.C. § 1334(b)

Vanguard invoked the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(b).  That section of the United States Code provides for "three types of district court jurisdiction over bankruptcy proceedings: [1] 'arising under' jurisdiction; [2] 'arising in' jurisdiction; and [3] 'related to' jurisdiction . . . .  'Arising under' jurisdiction exists when the proceeding invokes a substantive right created by federal bankruptcy law. 'A claim 'arises in' bankruptcy if, by its

- 6 -

very nature, the claim can only be brought in a bankruptcy action, because it has no existence

outside of bankruptcy. . . .'  Jurisdiction under 28 U.S.C. § 1334(b)'s 'related to' prong rests

where the proceeding's outcome 'could conceivably have any effect on the estate being

administered in bankruptcy.'"  *In re New England Nat.,* 2012 WL 3987648, at *4 (Bankr. D.

Conn. Sept. 11, 2012); *see Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d

572 (2d Cir. 2011).

> The bankruptcy court's post-confirmation jurisdiction is not expressly limited under

section 1334.  *Park Ave. Radiologists, P.C. v. Melnick (In re Park Ave. Radiologists, P.C.)*, 450

B.R. 461, 467 (Bankr. S.D.N.Y. 2011).   Nevertheless, "most courts agree that once confirmation

occurs, the bankruptcy court's jurisdiction shrinks."  *Id.*  Therefore, courts have crafted tests to

determine when a bankruptcy court may exercise subject matter jurisdiction after confirmation of

a bankruptcy plan.  The Second Circuit has used the "close nexus test" to determine post-

confirmation subject matter jurisdiction.[6] Last year, the bankruptcy court for this district adopted

the use of the "close nexus test" following confirmation of a bankruptcy plan.  *See In re New*

*England Nat.*, 2012 WL 3987648, at *6.  The bankruptcy court of the Southern District of New

York also uses that test.  *See, e.g.*, *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550

(Bankr. S.D.N.Y. 2011).

>> C.   Whether the "Close Nexus Test" Permits the Bankruptcy Court to Exercise Post-
>>       Confirmation Jurisdiction

---

[6] There is some dispute among the circuit courts over the application of the "close nexus"
test.  *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d
Cir. 2007) ("[T]he 'close nexus' standard only applies for the purposes of determining whether a
federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation
context.")  The Second Circuit has applied the "close nexus" test to core and non-core post-
confirmation proceedings.  *In re New England Nat.,* 2013 WL 812380 (Bankr. D. Conn. Mar. 5,
2013).

"A party can invoke the authority of the bankruptcy court to exercise post confirmation jurisdiction if the matter has a close nexus to the bankruptcy plan and the plan provides for the retention of such jurisdiction."  *In re DPH Holdings Corp.,* 448 F. App'x at 137; *In re New England Nat.*, 2012 WL 3987648, at *5.[7]  Here, neither requirement is met.

      1.  *Whether There is a Close Nexus Between the Adversary Proceeding and the Plan*

Vanguard must show that the matter has a close nexus to the Plan.  In *DPH Holdings*, the Second Circuit found a close nexus where the disputed issue would "impact the implementation, execution, and administration" of the bankruptcy plan.  448 F. App'x at 137.

Vanguard argues that, because, under the terms of the Plan, any recovery must go toward payment of Vanguard's administrative claim, the adversary proceeding will affect the implementation, consummation, execution, or administration of the Plan.[8]  This argument is unavailing.  Under this theory, a creditor or administrative claimant could establish a close nexus to the bankruptcy plan simply by asserting a claim for post-confirmation payment.  Such a broad rule would obliterate any limits on the bankruptcy court's jurisdiction.  *See In re Gen. Media, Inc.*, 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005) ("A bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to creditors, because the rationale 'could endlessly stretch a bankruptcy court's jurisdiction.'" (quoting *In re Pegasus Gold Corp.* 394 F.3d 1189, 1194 n.1 (9th Cir. 2005))).

In *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC,* the court held that the plaintiffs' suit had a close nexus to the bankruptcy case because it implicated the bankruptcy court's

---

[7] The Second Circuit's opinion in *DPH Holdings* is a summary order and, therefore, does not have precedential effect.  2d Cir. R. 32.1.1(a).  It is, however, the only Second Circuit opinion to address the "close nexus" requirement.

[8] Vanguard also argues that the disgorgement of unapproved fees paid to Curley and Omni Solo would be in furtherance and execution of the Plan.

confirmation order and alleged, "in effect" a fraud on the bankruptcy court.  401 B.R. 589 (S.D.N.Y. 2009).  Vanguard seizes on that case in support of its contention that a close nexus may be found when the adversary proceedings allege, "in effect," fraud "as part of a scheme to secure the liquidation plan's most valuable assets."  In *Savoy*, the two partner-debtors sued a third partner who they alleged concealed his involvement in a plan to purchase the partnership's assets in a sale conducted, with bankruptcy court approval, as part of the partnership's bankruptcy plan.  The *Savoy* Court concluded that, because the plaintiffs' allegations of fraud "str[uck] at the heart of the liquidation plan," they implicated matters that affected the interpretation and administration of the confirmed plan.  *Id.* at 597.  Vanguard fails to mention that the *Savoy* plaintiffs also met the second prong of the test for post-confirmation jurisdiction— that the plain text of the confirmation order "made clear that the Bankruptcy court intended to retain broad post-confirmation jurisdiction."  *Id.* at 598.  In contrast, the Plan here clearly terminates the court's jurisdiction upon entry of a final decree.  *See infra*, Part A.2.

Vanguard also cites *Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010), in support of its contention that an alleged fraud implicated the bankruptcy court's jurisdiction.  Although the court may consider allegations of fraud in determining its jurisdiction, it is important to look at the factual circumstances.  *See In re New England Nat.*, 2012 WL 3987648, at *6 ("Determining whether the 'close nexus' test has been satisfied is a fact sensitive endeavor.").  It is clear that a mere allegation of fraud is not sufficient to confer post-confirmation subject matter jurisdiction. In *Baker*, the plaintiff-debtor alleged legal malpractice against counsel who represented him in the bankruptcy process.  The Second Circuit held that the plaintiff's claim that he was afforded substandard legal representation in his bankruptcy case did "arise in" the Title 11 case, such that the bankruptcy court had jurisdiction over them.  There, legal malpractice related directly to the

plan.  The relationship between the parties arose only in the bankruptcy.  The plaintiff's claims would have no meaning outside of the bankruptcy context and no practical existence but for the bankruptcy.  In the case at bar, not only did the relationship between Indicon and Vanguard arise before the bankruptcy proceedings, the asset sale was not consummated until after the confirmation of the plan, and Vanguard's fraud allegations, although they arose in the context of the bankruptcy, affect only Vanguard's right to recovery as an administrative claimant.

Vanguard finally argues that the disgorgement of unapproved fees paid to Curley and Omni Solo would be in furtherance and execution of the Plan.  The Plan provides

> [f]ees due to professionals retained in a Chapter 11 case by the Debtor. . . shall only be payable after the appropriate notice and a hearing and the entry of a Final order awarding the same.

Plan, Art. IV, § 3.A.2.  Although payments to Curley and Solo for services may have been made post-confirmation, it cannot be the case that simply because the Plan provides procedures for approving payments to retained professionals that the bankruptcy court retains continuing jurisdiction to order disgorgement of such payments.  Again, such a broad reading would obliterate any limits on the bankruptcy court's jurisdiction in any case where a retained professional received a payment connected to an adversary proceeding.

  2. *Whether the Bankruptcy Court had Post-confirmation Jurisdiction to Adjudicate the Adversary Proceeding Because It Implicates the Integrity of the Bankruptcy Process.*

Vanguard also offers an argument that rejects the Second Circuit's adoption of the "close nexus" test, contending that the bankruptcy court has post-confirmation jurisdiction because the debtors' actions implicate the integrity of the bankruptcy process.  Specifically, Vanguard describes the bankruptcy proceedings as an "engine of fraud" that individuals used to consummate an asset purchase and sale, enrich Indicon's president and other professionals, and divert asset sale proceeds away from creditors, in violation of the Bankruptcy Code.

In support of its argument, Vanguard cites to two decisions from the Third Circuit.  In the first, *Mullarkey v. Tamboer (In re Mullarkey)*, the court held that where a post-confirmation adversary proceeding alleges a fraud or other wrongdoing that occurred during the bankruptcy process, "implicate[s] the integrity of the bankruptcy process" and "is inseparable from the bankruptcy context," a bankruptcy court has jurisdiction to adjudicate it.  536 F.3d 215, 223-24 (3d Cir. 2008).  In *Mullarkey*, the court conducted a fact-intensive analysis and held that the allegations of the complaint stated a claim for fraud that occurred during the bankruptcy process and affected an asset of the bankruptcy estate.  The complaint alleged that the defendant-creditor concealed from the trustee assets belonging to the estate, made a false certification to the bankruptcy court, presented false claims to the court to obtain title to property in a fraudulent manner, committed the crime of solicitation of conspiracy, fraudulently foreclosed on estate property with a bogus lien, concealed the sale of the property from the bankruptcy court/trustee through false statements, and violated the RICO statute.  The court also noted that the case implicated not only the integrity of the bankruptcy process, but involved the solvency of the debtor, "the cornerstone of the distribution plan."  In *Seven Fields,* the other Third Circuit case Vanguard relies on, the court confirmed the bankruptcy plan in reliance on the advice of the same parties accused of fraud.  505 F.3d 237 (3d Cir. 2007).  There, the complaint alleged that the accounting firm advising them represented to the bankruptcy court that the debtors were insolvent, leading them to sell assets at below market prices.  That court held that "arising in" jurisdiction was present and that the claims arose prior to confirmation of the plan "inasmuch as the conduct on which the parties predicated the claims occurred during the bankruptcy process." *Id.* at 260.

The complaint in the case before this court alleges a series of violations of the Bankruptcy Code and breach of a commercial lease—claims that do not go to the core of the bankruptcy process.  Vanguard alleges that the connection between the defendants' conduct and the bankruptcy proceeding arises because the conduct affects payment on Vanguard's administrative claim and the alleged violations of the Bankruptcy Code.  Again, a connection between payments to administrative claimants and the bankruptcy proceeding seems too tenuous to implicate the bankruptcy plan.  In any event, although the allegations may implicate the integrity of the bankruptcy process, that is not the standard the Second Circuit requires this court to follow.  There is a distinction between acts that "affect the implementation, execution, or administration" of the Plan, as the Second Circuit's close nexus test requires, and those that "implicate the integrity of the bankruptcy court," under the Third Circuit's broader test.  Although the defendants' actions may indicate, at best, a lack of candor with the bankruptcy court, they do not rise to the level the Second Circuit requires to allow the bankruptcy court to retain jurisdiction, particularly in light of the Plan's termination of the bankruptcy court's jurisdiction upon entry of a final decree.

3.  *Whether the Plan Provided for Post-Confirmation Retention of Jurisdiction*

Even if Vanguard could demonstrate that there is a close nexus between the adversary proceeding and the Plan, it must show that the Plan provided for the post-confirmation retention of jurisdiction.  Vanguard cannot do so.

The Plan provides:

The Bankruptcy Court retains jurisdiction of this Case, pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until entry of a final Decree as set forth in Bankruptcy Rule 3022.

Plan, Art. X, Part B, § 9.1 (emphasis added).  Thus, by the Plan's plain language, the court's jurisdiction ended with the entry of the final decree in February 2009.[9]  The case was reopened on February 24, 2010, nearly two years after the Plan's confirmation.  Vanguard, in essence, argues that once the case was reopened, the final decree was eradicated, allowing the court to retain jurisdiction.  Vanguard is mistaken.  As both the defendants stated and numerous courts have held, pre-confirmation subject matter jurisdiction narrows after confirmation.  *See In re Park Ave. Radiologists*, 450 B.R. at 467 ("[M]ost courts agree that once confirmation occurs, the bankruptcy court's jurisdiction [under Section 1334] shrinks.") (citation and internal quotation marks omitted).  Once confirmation occurs, the Plan terminates subject matter jurisdiction over proceedings related to the debtor's estate and the debtor's estate ceases to exist.   *In re Gen. Media*, 335 B.R. at 74.  Here, not only has confirmation been ordered, but the bankruptcy court entered a final decree, signaling the administrative conclusion of the bankruptcy case.  *See In re Gould*, 437 B.R. 34, 39 (Bankr. D. Conn. 2010).

Vanguard contends that "jurisdiction over a bankruptcy case is distinct from jurisdiction over discrete disputes that arise in a bankruptcy case." App. Br. at 12.  Although Vanguard's contention is generally true, it does little to support the bankruptcy court's continued jurisdiction over the matter here.  The limits on a bankruptcy court's jurisdiction recognize that some matters are better suited to adjudication by one court or another.  Thus, in the interests of efficiency,

---

[9] The confirmed plan defines the relationships between the debtor and creditors after reorganization and binds the debtor and creditors and parties in interest to its provisions.  11 U.S.C. § 1141(a).  It also vests the property of the estate in the debtor free of other claims except as the plan may provide.  11 U.S.C. §§ 1141(b) and (c).  Entry of a final decree closes the bankruptcy case after the estate is fully administered.  Fed. R. Bankr. P. 3022.  The court can reopen the case to revoke an order of confirmation procured by fraud.  *See* 11 U.S.C. § 1144.  "If the plan or confirmation provides that the case shall remain open until a certain date or event because of the likelihood that the court's jurisdiction may be required for specific purposes prior thereto, the case should remain open until that date or event."  Fed. R. Bankr. P. 3022.

some matters are left within the jurisdiction of the bankruptcy court, plaintiff's argument

notwithstanding.

Vanguard also argues that other provisions of the Plan provide the court with jurisdiction,

pointing to section 9.1 of the Plan, which provides that

> [T]he Debtor will ask the court to hear any issue arising with respect to. . . all Claims or controversies arising out of any contracts made or undertaken by the Debtor during the pendency of this Chapter 11 case. . . recover[y of] all assets and properties of the Debtor. . . fix[ing] or approv[ing] the allowance of compensation to all professionals. . . .

Plan, Art. X, Part B, § 9.1(f)-(h).  Vanguard, invoking the bankruptcy court's equitable powers to

prevent fraud in the bankruptcy process, argues that the court should exercise jurisdiction over

Vanguard's attempts to raise these matters regardless of the Plan's requirement that the debtor

raise them.  The Plan could have granted creditors a right to seek court rulings regarding

compensation to professionals, but it did not.  Allowing any potential creditor to give the

bankruptcy court subject matter jurisdiction merely by raising a concern relating to those issues

seems beyond the intent of the Plan.  Such a broad reading of that clear statement, without taking

into consideration the jurisdiction retention clause, would effectively provide the bankruptcy

court with subject matter jurisdiction over any dispute related to the bankruptcy at any time.  The

Plan clearly intends to limit the bankruptcy court's jurisdiction.

D. <u>Whether the Bankruptcy Court had Ancillary or Supplemental Jurisdiction to Adjudicate the Adversary Proceeding.</u>

Vanguard argues that the Bankruptcy Court, even if it does not have post-confirmation

jurisdiction pursuant to section 1334, has ancillary jurisdiction.  As stated above, all courts

addressing the question have ruled that the bankruptcy court's jurisdiction shrinks after

confirmation of the plan.  *See In re General Media* 335 B.R. 66, 72 (Bankr. S.D.N.Y. 2005).

Also, the Plan expressly terminated the bankruptcy court's jurisdiction upon entry of a final

decree.  Appeals to the general concept of ancillary jurisdiction are unavailing in light of statutory limitations on the bankruptcy court's post-confirmation jurisdiction and the express intention of the bankruptcy court to terminate its jurisdiction upon entry of a final decree.

Vanguard also argues that the bankruptcy court has supplemental jurisdiction to hear all of its claims if the court had jurisdiction to hear any of its claims.  Although the Second Circuit has permitted the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367, *see In re Lionel*, 29 F.3d 88, 92 (2d Cir. 1994), it is within the court's discretion to decline to exercise that power.  The bankruptcy court expressed its intention to terminate jurisdiction upon entry of a final decree and has declined to exercise supplemental jurisdiction.  That decision was not erroneous or an abuse of discretion.

E. Whether the Proper Vehicle for Vanguard's Fraud-Based Claims is 11 U.S.C. § 1144

Tesoriere argues that the proper vehicle for Vanguard to seek remedy for its fraud-based claims was to request the bankruptcy court to revoke the confirmation agreement under 11 U.S.C. § 1144.[10]  Tesoriere also argues that Vanguard's claim should be dismissed because it did not file a timely action under 11 U.S.C. § 1144.  The issue is not properly before the court because Tesoriere raises it for the first time on appeal.  An appellate court generally does not consider arguments raised for the first time on appeal unless "manifest injustice" will result or where the argument presents a question of law and there is no need for additional fact-finding. *Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006) (internal quotations and citations omitted).  Tesoriere moved to dismiss Vanguard's complaint for lack of subject matter jurisdiction.  At no time did he offer an argument suggesting that Vanguard's complaint should

---

[10] Section 1144 of Title 11 provides that "On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

be dismissed for failure to bring a revocation action or for failure to timely file such an action.

Accordingly, I need not consider whether the proper vehicle for the adversary proceeding is

section 1144.

**IV.     Conclusion**

For the reasons stated above, the order of the Bankruptcy Court is **AFFIRMED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2013.


/s/ Stefan R. Underhill_____
Stefan R. Underhill
United States District Judge